# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| RICHARD DENT, STEVE FULLER WILLE GAULT, JIM MCMAHON, MIKE RICHARDSON, and OTIS WILSON, | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 14 C 02999 |
| v. | ) ) | |
| | ) | Judge Edmond E. Chang |
| RENAISSANCE MARKETING CORPORATION and JULIA MEYER, | ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Six members of the 1985 Chicago Bears football team, Richard Dent, Steve Fuller, Willie Gault, Jim McMahon, Mike Richardson, and Otis Wilson (collectively Plaintiffs or the Shufflin' Crew), filed this suit against Renaissance Marketing Corporation and Julia Meyer. R. 1-1, Compl. ¶ 1.[1] On its face, the complaint alleges several state-law claims, and the case was initially filed in state court. *Id.* Plaintiffs allege that Defendants used Plaintiffs' performance in the "Super Bowl Shuffle" without authorization, and these ex-Bears players now bring claims for a constructive trust, declaratory judgment and related injunctive relief, conversion, unjust enrichment, and an accounting. *Id.* ¶¶ 35-66. Defendant Julia Meyer

---

[1]Citation to the docket is "R." followed by the entry number.

removed the case to federal court, arguing that the Copyright Act, 17 U.S.C. § 101 *et seq.*, preempts Plaintiffs' state-law claims. R. 1, Defs.' Notice of Removal ¶¶ 17, 51. Plaintiffs now move to remand. R. 15, Pls.' Mot. Remand. For the reasons detailed below, the Plaintiffs' motion is denied because three of the claims actually assert rights under the federal Copyright Act, not merely state law. The case must remain in federal court.

## I. Background

The Shufflin' Crew are six former members of the Super-Bowl-champion Chicago Bears. Compl. ¶¶ 4-9.[2] In 1985, Richard E. Meyer, who was at that time the president of Red Label Records, Inc., approached Plaintiffs and other members of the 1985 Chicago Bears hoping to capitalize on the Bears' successful season. *Id.* ¶ 12. The parties agreed to develop and record the Super Bowl Shuffle, a song and music video trumpeting the success of the 1985 Chicago Bears, and entered into a Royalty Agreement in November 1985 to define each party's rights in the work. *Id.* ¶¶ 12-14. The Agreement also set an expiration date: March 31, 1989. *Id.* ¶ 32. On September 15, 1986, Red Label Records purportedly assigned its interest in the Super Bowl Shuffle to its President, Richard Meyer. *Id.* ¶ 18. Julia Meyer, Richard Meyer's widow, claims she now has survivorship rights in the Super Bowl Shuffle based on that assignment. *Id.* ¶ 11. Defendant Renaissance Marketing Corporation is Julia Meyer's exclusive licensing agent for the Super Bowl Shuffle. *Id.* ¶ 10.

---

[2]The 1985 Bears won the Super Bowl by thrashing the New England Patriots, 46-10, which at the time was the largest margin of victory of any Super Bowl. Still, that margin was not as wide as most of the Chicago Superfans' comedic predictions of Bears matchups, including a puzzling but memorable 31 to minus-7 prediction.

2

The Shufflin' Crew argues that Red Label Records's initial assignment to Richard Meyer was inoperative. *Id.* ¶ 19. Under § 16 of the Royalty Agreement, Red Label Records could not assign its interest without the Shufflin' Crew's consent. *Id.* ¶¶ 19-20. Red Label Records allegedly never sought nor received the Shufflin' Crew's permission, and the Shufflin' Crew maintains that they had no reason to believe that any assignment took place. *Id.* ¶¶ 21-22. Because they believe that the initial assignment to Richard Meyer was not valid, the Shufflin' Crew argues that Julia Meyer and Renaissance could never have acquired an interest in the performance. *Id.* ¶ 23. Plaintiffs claim, therefore, that Defendants improperly benefitted from marketing, distributing, and licensing the Super Bowl Shuffle without authorization. *Id.* ¶¶ 24, 33-34. They filed this suit in state court, bringing claims for a constructive trust, declaratory judgment and related injunctive relief, conversion, unjust enrichment, and an accounting. *Id.* ¶¶ 35-66. Defendants removed Plaintiffs' suit to federal court, claiming that the state-law claims were preempted by the Copyright Act. *See* Defs.' Notice of Removal. The Shufflin' Crew now moves to remand, arguing that that the removal was untimely and that the claims were not preempted by the Copyright Act. *See* Pls.' Mot. Remand.

## II. Legal Standard

Removal is governed by 28 U.S.C. § 1441, which provides, in pertinent part, that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district . . . embracing

the place where such action is pending." 28 U.S.C. § 1441(a). "Only state-court actions that originally could have been filed in federal court may be removed to federal court." *Caterpillar v. Williams*, 482 U.S. 386, 392 (1987). "The party seeking removal has the burden of establishing federal jurisdiction, and federal courts should interpret the removal statute narrowly, resolving any doubt in favor of the plaintiff's choice of forum in state court." *Schur v. L.A. Weight Loss Ctrs.*, 577 F.3d 752, 758 (7th Cir. 2009) (citing *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993)); *see also Northeastern Rural Elec. Membership Corp. v. Wabash Valley Power Ass'n, Inc.*, 707 F.3d 883, 893 (7th Cir. 2013).

In general, federal district courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The usual test for federal-question jurisdiction under § 1331 is the "well pleaded complaint rule," which requires federal courts to look only at the complaint itself "to determine if the case arises under federal law." *Vorhees v. Naper Aero Club, Inc.*, 272 F.3d 398, 402 (7th Cir. 2001). In addition, "[c]omplete preemption 'confers exclusive federal jurisdiction in certain instances where Congress intended the scope of a federal law to be so broad as to entirely replace any state-law claim.'" *Nelson v. Welch (In re Repository Techs.)*, 601 F.3d 710, 722 (7th Cir. 2010) (citing *Franciscan Skemp Healthcare, Inc. v. Cent. States Joint Bd. Health & Welfare Trust Fund*, 538 F.3d 594, 596 (7th Cir. 2008)). "Under this jurisdictional doctrine, certain federal statutes have such 'extraordinary pre-emptive power' that they 'convert [ ] an ordinary state common law complaint into one stating a federal claim.'" *Id.*

4

(citing *Franciscan Skemp Healthcare*, 538 F.3d at 596; *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004)). "Complete preemption, therefore, creates an exception to the rule that courts look only to the plaintiff's well-pleaded complaint to determine whether federal jurisdiction exists. If the complaint pleads a state-law claim that is completely preempted by federal law, the claim is removable to federal court." *Id.* (citing *Franciscan Skemp Healthcare*, 538 F.3d at 596-97).

The federal Copyright Act preempts "all legal and equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106" and are "in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103." 17 U.S.C. § 301(a). "Even though [a] claim is created by state law, a case may 'arise under' a law of the United States if the complaint discloses a need for determining the meaning or application of . . . [the federal] law." *See T.B. Harms Co. v. Eliscu*, 339 F.2d 823, 827 (2d Cir. 1964); *Int'l Armor & Limousine Co. v. Moloney Coachbuilders, Inc.*, 272 F.3d 912, 915-16 (7th Cir. 2001) (adopting the reasoning of *T.B. Harms*). But not every claim that involves a copyright will be preempted by the Copyright Act. *See T.B. Harms*, 339 F.2d at 825-27; *Nova Design Build, Inc. v. Grace Hotels, LLC*, 652 F.3d 814, 816 (7th Cir. 2011). Preemption applies when "establishing the plaintiff's right [under the state-law cause of action] will require interpreting federal law." *Saturday Evening Post Co. v. Rumbleseat Press, Inc.*, 816 F.2d 1191, 1194 (7th Cir. 1987).

Two conditions must be satisfied for copyright preemption of a state-law cause of action under § 301. "First, the work in which the right is asserted must be fixed in tangible form and come within the subject matter of copyright as specified in § 102. Second, the right asserted must be equivalent to any of the rights specified in § 106." *Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n*, 805 F.2d 663, 674 (7th Cir. 1986). Section 106 of the Copyright Act specifies five exclusive and fundamental rights in a copyrighted work: reproduction, adaptation, publication, performance, and display. 17 U.S.C. § 106; *Toney v. L'Oreal USA, Inc.*, 406 F.3d 905, 909 (7th Cir. 2005). To avoid preemption, a state-law claim must claim a right that is "qualitatively distinguishable" from these five rights. *Toney*, 406 F.3d at 910. In determining if a claim is qualitatively distinguishable, courts will look to the right that the plaintiff seeks to protect and the reasons he believes those rights should be protected. *Briarpatch Ltd., L.P. v Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004). If even one claim is preempted, then removal is proper. *See* 28 U.S.C. § 1367; *Vaughn v. Kelly*, No. 06 C 6427, 2007 WL 804694, at *3, (N.D. Ill. Mar. 13, 2007).

### III. Analysis

### A. Preemption

Plaintiffs do not dispute that the Super Bowl Shuffle is fixed in tangible form and comes within the subject matter of copyright. R. 16, Pls.' Br. at 8-14; *see also* 17 U.S.C. § 102(a). But they argue that the right to be enforced in each count of the complaint is not equivalent to any of the rights specified in § 106, and that their

6

claims are therefore not preempted by the Copyright Act. Pls.' Br. at 8-14. Although only a single claim must be preempted for removal to be proper (because then there would be federal-question jurisdiction over that claim, and possibly supplemental jurisdiction over the other genuinely state-law claims), *Vaughn*, 2007 WL 804694 at *3, the Court will address each count in Plaintiffs' complaint.

**1. Claims for Declaratory Judgment and Related Injunctive Relief**

In Counts 2 and 3 of their complaint, Plaintiffs seek a declaratory judgment that the assignment to Richard Meyer was invalid and that the Plaintiffs "own their identities, images, names, photographs, likenesses, voices and performances in the Super Bowl Shuffle." *Id.* ¶¶ 43, 48. In both counts, Plaintiffs also seek an injunction barring Defendants from using or benefitting from the Shufflin' Crew's "identities, images, names, photographs, likenesses, voices and performances in the Super Bowl Shuffle and/or otherwise." *Id.* ¶¶ 44, 49. Defendants argue that these claims are preempted because the declaratory and injunctive relief sought would "control the sale, licensing, distribution, reproduction, publishing, performance and display of the Shuffle." Defs.' Notice of Removal ¶ 47. Rights equivalent, they argue, to the rights described in § 106. *Id.* Plaintiffs respond that their request for declaratory and injunctive relief is premised on the *contract* between the Shufflin' Crew and Red Label Records. Pls.' Br. at 12-13. They argue that the Shufflin' Crew is attempting to enforce rights granted to them against Defendants by the Royalty Agreement, not a "claim against the world" established by the Copyright Act. *Id.* (quoting *ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1454 (7th Cir. 1996)).

That view of the asserted rights is incorrect. The relief that the Shufflin' Crew seeks in these counts makes clear that Plaintiffs are not seeking to enforce just the Royalty Agreement. Unlike rights derived from copyright law, contracts "generally affect only their parties." *ProCD*, 86 F.3d at 1454. Defendants were not parties to the agreement, and Plaintiffs' own complaint alleges that Richard Meyer, the source of Defendants' supposed rights in the Super Bowl Shuffle, was not a valid assignee to the contract. *See* Compl. ¶¶ 19-20. So based on Plaintiffs' own allegations in the complaint, Defendants are effectively strangers to the contract. In Counts 2 and 3, Plaintiffs ask the Court to prevent these non-parties from marketing, distributing, or licensing the Super Bowl Shuffle at all. That is, they are asking the Court to protect their rights in the underlying work against these non-contractual-party Defendants based, really, on rights "against the world." *See ProCD*, 86 F.3d at 1454. Look at this way: if Plaintiffs win an invalidation of the assignment, then what would justify their request that Defendants be barred from using the Shufflin' Crew's "identities, images, names, photographs, likenesses, voices and performances in the Super Bowl Shuffle and/or otherwise"? *Id*. ¶¶ 44, 49. The answer: the source of the relief would *not* be the contract; it would be the federal Copyright Act. Rights of this nature are not qualitatively distinguishable from the exclusive rights granted to copyright holders under § 106, so the Court cannot grant this form of relief without relying on federal copyright law.

Even if Defendants were valid assignees, the Royalty Agreement expired in March of 1989. Compl. ¶ 32. Plaintiffs themselves claim that the rights of the

parties under the contract terminated at that time. *Id.* ¶ 33. Although neither party had any rights under contract after 1989 (at least according to the complaint itself), Plaintiffs still seek declaratory and injunctive relief concerning their "identities, images, names, photographs, likenesses, voices, and performances in the Super Bowl Shuffle" after 1989 and going forward. Compl. ¶¶ 43-44, 48-49. This relief is not based on the contract, let alone the allegedly expired contract. Again, Plaintiffs ask the Court to prevent Defendants from marketing, distributing, and licensing the Super Bowl Shuffle outside the bounds of the Royalty Agreement. Plaintiffs are essentially asking to enforce the *copyright*, and that relief cannot be granted without determining the meaning or application of copyright law.

Plaintiffs argue the relief that they seek "mirrors that in *Toney v. L'Oreal*," in which the plaintiff brought a state-law publicity claim against the defendants for using plaintiff's likeness in an advertisement. 406 F.3d at 907. In *Toney*, the plaintiff's publicity claim was not preempted by the Copyright Act because the state-law publicity claim protected the plaintiff's *identity*, not any particular embodiment of that identity. *Id.* at 908-09. The state-law claim challenged the use of the plaintiff's identity for a commercial purpose. That the particular embodiment of her identity in question was subject to a copyright owned by the defendants was irrelevant to the plaintiff's claim. *Id.* The plaintiff was not challenging the defendant's right to use the photograph, but its right to use her identity for commercial purposes. *Id.*

By contrast, the Shufflin' Crew is not asking for protection of solely their identities in general; they seek a declaration that they own their "identities, images, names, photographs, likenesses, voices and performances *in the Super Bowl Shuffle*," and ask the Court to "extinguish[ ] any rights Defendants purport to have *in the Super Bowl Shuffle*." Compl. ¶¶ 43, 47-48 (emphasis added). The crucial point is that they seek to prevent use of their identities *in the song itself*—a particular copyrighted embodiment. *Cf. Toney*, 406 F.3d at 908-09; *see also Laws v. Sony Music Entm't, Inc.*, 448 F.3d 1134, 1141 (9th Cir. 2006) ("[W]e think it is clear that federal copyright law preempts a claim alleging misappropriation of one's voice when the entirety of the allegedly misappropriated vocal performance is contained within a copyrighted medium."); *Midler v. Ford Motor Co.*, 849 F.2d 460, 462 (9th Cir. 1988). Here, extinguishing Defendants' rights *in the Super Bowl Shuffle* implicates the Copyright Act's exclusive rights of reproduction, publication, and performance. 17 U.S.C. § 106; *see also Toney*, 706 F.3d 907-08; *Briarpatch*, 373 F.3d at 307. No court can grant Plaintiffs the relief they seek without relying on federal copyright law. Counts 2 and 3 of Plaintiffs' complaint are therefore preempted by the Copyright Act.

**2. Claim for Conversion**

Plaintiffs also bring a claim for conversion (Count 4). To state a claim for conversion under Illinois law, a plaintiff must show (1) he has a right to the property in question; (2) he has an absolute and unconditional right to the immediate possession of the property; (3) he made a demand for possession of that

10

property; and (4) the defendant wrongfully assumed ownership or control over that property. *Loman v. Freeman*, 890 N.E.2d 446, 461 (Ill. 2008). In Count 4, Plaintiffs claim that they have "an absolute, unconditional and immediate right to their identities, images, names, photographs, likenesses, voices and performances in the Super Bowl Shuffle and/or otherwise." Compl. ¶ 52. They claim that Defendants "misappropriated" this property when they "marketed, distributed and sold licenses related to the Super Bowl Shuffle." Compl. ¶ 51.

Like the counts seeking declaratory judgment, the conversion count seeks to protect an interest in the song itself, rather than the Shufflin' Crew's persona in general. Plaintiffs claim a property interest in their identities, but these allegations do not go beyond the unauthorized publication of the Super Bowl Shuffle. Plaintiffs claim that Defendants did not have rights in the Super Bowl Shuffle, and by marketing, licensing, and distributing the song, Defendants gained improper benefits. Compl. ¶ 51(d), (f)-(h). The crux of the conversion claim is the unauthorized use of the *song*; Plaintiffs' claim is thus "focused on the defendants' unauthorized publishing . . . of the protected work." *Seng-Tiong Ho v. Taflove*, 648 F.3d 489, 501-02 (7th Cir. 2011). This is not qualitatively distinguishable from the exclusive rights set forth in § 106 and necessarily implicates copyright ownership in the Super Bowl Shuffle.

The extent of the relief requested also demonstrates that Plaintiffs are not relying on a contractual obligation. Just like Counts 2 and 3, Plaintiffs seek relief in Count 4 for Defendants' unlawful use of the Shufflin' Crew's performance "after

11

September 15, 1986 and *through the present*." Compl. ¶ 51(d) (emphasis added). The Royalty Agreement expired on March 31, 1989, and the parties' rights under the contract (if any) terminated at that time. *Id.* ¶ 32. This illustrates that Plaintiffs are not seeking adjudication of their rights under just the Royalty Agreement, but are instead seeking adjudication of their rights to performance, display, and publication of the copyrighted work. The Court could not grant Plaintiffs the relief they seek without relying on federal copyright law, and Count 4 of Plaintiffs' complaint is therefore preempted by the Copyright Act.

### 3. Remaining Claims

Plaintiffs also bring claims for a constructive trust (Count 1), unjust enrichment (Count 5), and an accounting (Count 6). In Count 5, Plaintiffs allege that any benefit that Defendants derived from the Shufflin' Crew's "identities, images, names, photographs, likenesses, voices and performances in the Super Bowl Shuffle, or otherwise" were improperly acquired. Compl. ¶ 55. In Count 6, Plaintiffs seek an accounting of any improper financial benefit that Defendants derived as a result of "the Shufflin' Crew members' identities, images, names, photographs, likenesses, voices and performances in the Super Bowl Shuffle and/or otherwise," *id.* ¶ 66, and in Count 1, they ask that these benefits be placed in a constructive trust, *id.* ¶¶ 35-39. Defendants argue that any claims for ill-gotten gains are derived to the rights to reproduce, publish, perform, and display the Super Bowl Shuffle under § 106 and are therefore preempted. *See* Defs.' Notice of Removal at ¶¶ 35-44.

In contrast, Plaintiffs' claims for a constructive trust, unjust enrichment, and an accounting do not necessarily "require interpreting federal law." *Saturday Evening Post*, 816 F.2d at 1194; *see also Crosby v. Cooper B-Line, Inc.*, 725 F.3d 795, 800 (7th Cir. 2013) (holding that a state-law claim is "'completely preempted' only when it is 'inextricably intertwined'" with the federal statute). Resolving doubts about removal in favor of Plaintiffs, *Northeastern Rural Elec.*, 707 F.3d at 893, it is possible for Plaintiffs' claims to plead a non-copyright basis for Counts 1, 5, and 6. For example, Plaintiffs may sue Defendants for unjust enrichment by alleging that Defendants held themselves out as if they had an affiliation with or authorization from the Shufflin' Crew, even though any affiliation ended no later than 1989 when the Royalty Agreement expired. If Defendants were unjustly enriched by misrepresenting their relationship with the Shufflin' Crew, that could support requiring an accounting by Defendants, and any ill-gotten proceeds could be ordered to be put in a constructive trust. Claims of this nature would not turn on any interpretation of the validity or ownership of the underlying copyrights; they would concern only the relationship between the parties. Counts 1, 5, and 6 of Plaintiffs' complaint are therefore not preempted by the Copyright Act.

Nevertheless, the Court may still exercise supplemental jurisdiction over these state-law claims. 28 U.S.C. § 1367. A federal court can exercise supplemental jurisdiction over state-law claims when the claims "derive from a common nucleus of operative facts." *Sanchez & Daniels v. Koresko*, 503 F.3d 610, 614 (7th Cir. 2007) (internal quotation marks and citations omitted). "A loose factual connection

13

between the claims is generally sufficient." *Id*. The facts underlying all counts of the Plaintiffs' complaint are essentially the same; the claims all stem from Defendants' allegedly unauthorized marketing, distribution, and licensing of the Super Bowl Shuffle. *See* Compl. ¶¶ 36, 42, 47, 51, 55, 60. The Court therefore retains jurisdiction over Counts 1, 5, and 6.

### B. Timeliness of Removal

Plaintiffs argue that the Notice of Removal filed by Julia Meyer was untimely. Pls.' Br. at 13-14. A defendant must file a notice of removal "within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." 28 U.S.C. § 1446(b)(1). A later-served defendant has "30 days after receipt by or service on that defendant of the initial pleading or summons" to file a notice of removal. 28 U.S.C. § 1446(b)(2)(B); *see also* H.R. Rep. No. 112-10 at 14 (2011), *reprinted in* 2011 U.S.C.C.A.N. 576 (noting that the addition of § 1446(b)(2)(B) was to clarify "that each defendant will have 30 days from his or her own date of service (or receipt of initial pleading) to seek removal"). Defendant Renaissance Marketing was served with the complaint on February 6, 2014, and Defendant Julia Meyer was served on April 21, 2014. Pls.' Br. at 14.

Although Meyer filed for removal on April 25, 2014, well within the 30-day time limit established by § 1446, Plaintiffs argue that removal was untimely because Meyer, as the sole officer of Renaissance Marketing, was likely made aware of the pending lawsuit when Renaissance Marketing was served back in February

14

2014. *Id.* at 13-14. Plaintiffs contend that formal service is not required to start the removal clock; Meyer only needed to receive, "through service or otherwise," a copy of the complaint. *Id.* (quoting *Cook v. Travelers Companies*, 904 F. Supp. 841, 842 (N.D. Ill. 1995)). "Mere receipt of the complaint unattended by any formal service," however, is not sufficient to start the 30-day removal clock. *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-48 (1999) ("An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process."). Meyer might have received notice of the complaint or even taken action in the litigation on behalf of Renaissance Marketing, but mere receipt of the complaint without formal service is not enough to trigger the removal period. *See Dultra v. U.S. Medical Home, Inc.*, No. 13 C 07598, 2014 WL 1347107, at *3 (N.D. Ill. Apr. 4, 2014) (quoting *Murphy Bros.*, 526 U.S. at 348). Meyer filed her notice of removal within 30 days after receiving service, and her removal petition is therefore timely.

## IV. Conclusion

For the reasons discussed above, Counts 2, 3, and 6 are preempted by the Copyright Act. This Court therefore has subject matter jurisdiction over these claims. *See* 28 U.S.C. §§ 1331, 1338. Jurisdiction over the remaining state-law claims is proper under 28 U.S.C. § 1367, as the claims derive from a common nucleus of operative facts. Plaintiffs' motion to remand is denied.

ENTERED:

    s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: October 28, 2014