**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| RICHARD DENT, STEVE FULLER WILLE GAULT, JIM MCMAHON, MIKE RICHARDSON, and OTIS WILSON, | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 14 C 02999 |
| v. | ) ) | Judge Edmond E. Chang |
| RENAISSANCE MARKETING CORPORATION and JULIA MEYER, | ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Six members of the 1985 Chicago Bears football team, Richard Dent, Steve Fuller, Willie Gault, Jim McMahon, Mike Richardson, and Otis Wilson (collectively Plaintiffs or the Shufflin' Crew), filed this suit in state court against Renaissance Marketing Corporation and Julia Meyer. R. 1-1, State Court Compl. ¶ 1.[1] Plaintiffs allege that Defendants used Plaintiffs' personas in the "Super Bowl Shuffle" without authorization. Renaissance and its sole officer, Julia Meyer, removed the original complaint to federal court, arguing that it was preempted by the Copyright Act, 17 U.S.C. § 101 *et seq.* R. 1, Defs.' Notice of Removal. Plaintiffs moved to remand. R. 15, Pls.' First Mot. Remand. This Court concluded that Plaintiffs' claims for declaratory judgment, injunctive relief, and conversion were preempted, but that the claims for unjust enrichment, constructive trust, and an accounting were not. R. 36, Order on First Mot. Remand. The Court therefore had federal-question

---

[1]Citation to the docket is "R." followed by the entry number.

jurisdiction over the preempted claims and supplemental jurisdiction over the remaining state-law claims. *Id.*

After the denial of the motion to remand, Plaintiffs amended their complaint, removing the preempted claims and adding a claim under the Illinois Right of Publicity Act, 765 ILCS 1075/1 *et seq.* R. 51, Am. Compl. Plaintiffs moved to remand the amended complaint, R. 53, Pls.' Second Mot. Remand, and Defendants again opposed the motion, R. 92, Defs.' Resp. Br. Red Label Publishing, Inc., a proposed third-party intervenor[2] and owner of the copyrights involved in this suit, also opposed the motion to remand. R. 94, Red Label Resp. Br. Both the Defendants and the intervenor (represented by the same counsel) argue that the Publicity Act claim is preempted by the Copyright Act, Red Label Resp. at 4-8; Defs.' Resp. Br. at 5-19, and Defendants argue that forum-manipulation concerns counsel against relinquishing subject-matter jurisdiction over the state-law claims, Defs.' Resp. Br. at 1-5. For the reasons discussed below, Plaintiffs' motion to remand is granted.

## I. Background

The Court assumes familiarity with the facts of the dispute between the Shufflin' Crew and Defendants as described more fully in the order denying the first motion to remand. *See Dent v. Renaissance Marketing Corp.*, 2014 WL 5465006, at *1 (N.D. Ill. Oct. 28, 2014) (R. 36 on the Court's docket). In short, the Shufflin' Crew—six former members of the Chicago Bears—agreed to perform in the Super Bowl Shuffle, a video and song celebrating the Chicago Bears' 1985 Super Bowl

---

[2]Red Label's motion to intervene was denied without prejudice in light of the motion to remand, but it was permitted to file a response to the motion. R. 56, Dec. 3, 2014 Minute Entry.

victory. R. 51, Am. Compl. ¶¶ 10-11. Red Label Records and its president, Richard Meyer, were to develop and produce the video. *Id.* ¶¶ 10-12. The parties entered into a Royalty Agreement to define each party's rights in the work and to ensure that the Shuffle's charitable purpose would be carried out. *Id.* ¶¶ 12-13; *see also* R. 51-1, Pls.' Exh. A, Royalty Agreement. The agreement expired on March 31, 1989. Am. Compl. ¶ 15. In 1986, Red Label assigned its rights in the Shuffle to Richard Meyer individually without the Shufflin' Crew's consent. *Id.* ¶ 19. Richard Meyer's widow, Defendant Julia Meyer, now claims survivorship rights in the Shuffle. State Court Compl. ¶ 11.

In 2014, the Shufflin' Crew filed this lawsuit in Illinois court against Julia Meyer and her licensing company, Defendant Renaissance Marketing. *Id.* at 1. Defendants removed the state-court case to federal court under 28 U.S.C. § 1441 on the basis of complete preemption by the Copyright Act, 17 U.S.C. § 101 *et seq.* Defs.' Notice of Removal at 2-20. Plaintiffs moved to remand, Pls.' First Mot. Remand, and the Court denied the motion, *Dent*, 2014 WL 5465006 at *1. In that order, the Court concluded that although some of Plaintiffs' claims against Renaissance and Meyer were not preempted by the Copyright Act (the claims for unjust enrichment, constructive trust, and an accounting), other claims were preempted, so remand was denied. *Id.* at *3-6. Plaintiffs then amended their complaint, eliminating the preempted claims and including a claim under the Illinois Right of Publicity Act, 765 ILCS 1075/1 *et seq.*[3] *See* Am. Compl. Plaintiffs moved to remand. Pls.' Second

---

[3]The amended complaint has four remaining counts: (1) unjust enrichment; (2) constructive trust; (3) accounting; and (4) Illinois Right of Publicity Act. Am. Compl.

Mot. Remand. Defendants and the proposed intervenors oppose remand. Defs.'
Resp. Br.; Red Label Resp. Br.

## II. Legal Standard

Removal is governed by 28 U.S.C. § 1441, which provides, in pertinent part,
that "any civil action brought in a State court of which the district courts of the
United States have original jurisdiction, may be removed by the defendant or the
defendants, to the district court of the United States for the district … embracing
the place where such action is pending." 28 U.S.C. § 1441(a). "Only state-court
actions that originally could have been filed in federal court may be removed to
federal court." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). After a case is
removed, it may be remanded based on lack of subject-matter jurisdiction at any
time before a final judgment is issued. 28 U.S.C. § 1447(c). Jurisdiction is
determined at the time of removal, however, *see In re Burlington N. Santa Fe Ry.
Co.*, 606 F.3d 379, 380-81 (7th Cir. 2010) (per curiam), so post-removal amendments
will not ordinarily strip the court of subject-matter jurisdiction, *see Carlsbad Tech.,
Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639-41 (2009) (holding that, although the claims
over which the court had original jurisdiction had been dismissed, the court
retained supplemental jurisdiction over the state-law claims; the decision to
relinquish jurisdiction over those claims was therefore discretionary and not based
on a lack of subject-matter jurisdiction). This is true even if the claims giving rise to
original jurisdiction were dismissed voluntarily. *Anderson v. Aon Corp.*, 614 F.3d
361, 364-65 (7th Cir. 2010) (holding that a court retains supplemental jurisdiction

over related state-law claims even when the federal claims are voluntarily dismissed). But even if a district court retains subject-matter jurisdiction over a removed case on the basis of supplemental jurisdiction, 28 U.S.C. § 1367, the court may relinquish that jurisdiction if all claims over which the court had original jurisdiction are dismissed. *RWJ Mgmt. Co. v. BP Prods. North America, Inc.*, 672 F.3d 476, 479-80 (7th Cir. 2012).

In general, federal district courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The usual test for federal-question jurisdiction under § 1331 is the "well pleaded complaint rule," which requires federal courts to look only at the complaint itself "to determine if the case arises under federal law." *Vorhees v. Naper Aero Club, Inc.*, 272 F.3d 398, 402 (7th Cir. 2001). In addition, "[c]omplete preemption 'confers exclusive federal jurisdiction in certain instances where Congress intended the scope of a federal law to be so broad as to entirely replace any state-law claim.'" *Nelson v. Welch (In re Repository Techs.)*, 601 F.3d 710, 722 (7th Cir. 2010) (citing *Franciscan Skemp Healthcare, Inc. v. Cent. States Joint Bd. Health & Welfare Trust Fund*, 538 F.3d 594, 596 (7th Cir. 2008)). "Under this jurisdictional doctrine, certain federal statutes have such 'extraordinary pre-emptive power' that they 'convert [ ] an ordinary state common law complaint into one stating a federal claim.'" *Id.* (citing *Franciscan Skemp Healthcare*, 538 F.3d at 596; *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004)). "Complete preemption, therefore, creates an exception to the rule that courts look only to the plaintiff's well-pleaded complaint to determine

whether federal jurisdiction exists. If the complaint pleads a state-law claim that is completely preempted by federal law, the claim is removable to federal court." *Id.* (citing *Franciscan Skemp Healthcare*, 538 F.3d at 596-97).

The federal Copyright Act preempts "all legal and equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106" and are "in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103." 17 U.S.C. § 301(a). "Even though [a] claim is created by state law, a case may 'arise under' a law of the United States if the complaint discloses a need for determining the meaning or application of … [federal] law." *See T.B. Harms Co. v. Eliscu*, 339 F.2d 823, 827 (2d Cir. 1964); *accord Int'l Armor & Limousine Co. v. Moloney Coachbuilders, Inc.*, 272 F.3d 912, 915-16 (7th Cir. 2001). But not every claim that involves a copyright will be preempted by the Copyright Act. *See T.B. Harms*, 339 F.2d at 825-27; *Nova Design Build, Inc. v. Grace Hotels, LLC*, 652 F.3d 814, 816 (7th Cir. 2011). Preemption applies when "establishing the plaintiff's right [under the state-law cause of action] will require interpreting federal law." *Saturday Evening Post Co. v. Rumbleseat Press, Inc.*, 816 F.2d 1191, 1194 (7th Cir. 1987).

Two conditions must be satisfied for copyright preemption of a state-law cause of action under § 301. "First, the work in which the right is asserted must be fixed in tangible form and come within the subject matter of copyright as specified in § 102. Second, the right asserted must be equivalent to any of the rights specified in § 106." *Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n*, 805 F.2d

6

663, 674 (7th Cir. 1986). Section 106 of the Copyright Act specifies five exclusive and fundamental rights in a copyrighted work: reproduction, adaptation, publication, performance, and display. 17 U.S.C. § 106; *Toney v. L'Oreal USA, Inc.*, 406 F.3d 905, 909 (7th Cir. 2005). To avoid preemption, a state-law claim must claim a right that is "qualitatively distinguishable" from these five rights. *Toney*, 406 F.3d at 910. In determining if a claim is qualitatively distinguishable, courts will look to the right that the plaintiff seeks to protect and the reasons he believes those rights should be protected. *Briarpatch Ltd., L.P. v Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004).

## III. Analysis

Plaintiffs' motion to remand their amended complaint raises two distinct questions. The first is whether the newly added right-of-publicity claim is preempted by the Copyright Act. If it is, the Court has federal-question jurisdiction over the case, 28 U.S.C. § 1331, and the case stays here. If the right-of-publicity claim is not preempted, the Court nevertheless has subject-matter jurisdiction under supplemental jurisdiction, 28 U.S.C. § 1367. *Carlsbad Tech*, 556 U.S. at 639-41 ("Upon dismissal of the federal claim, the District Court retained its statutory supplemental jurisdiction over the state-law claims."). The second question, then, is whether the Court should relinquish its supplemental jurisdiction.[4] *Id.* ("A district

---

[4]Plaintiffs frame this motion as one to remand under 28 U.S.C. § 1447(c), which permits a court to remand a case for lack of subject-matter jurisdiction at any time. *See* Pls.' Second Mot. Remand at 1. But because the Court retains its supplemental jurisdiction even if the claims over which the Court had original jurisdiction are dismissed, *Anderson*, 614 F.3d at 364-65, this characterization is inaccurate. The issue is whether the Court should *relinquish* jurisdiction, not whether it has jurisdiction at all.

court's decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary."). The Court will address each of these questions in turn.

## A. Preemption

The Illinois Right of Publicity Act (IRPA) gives individuals "[t]he right to control and to choose whether and how to use an individual's identity for commercial purposes." 765 ILCS 1075/10. The statute prohibits the unauthorized use of personal identity for any commercial purpose. 765 ILCS 1075/30. In their newly pled IRPA claim, Plaintiffs allege that Defendants "held themselves out as if they had an affiliation with or authorization from the Shufflin' Crew to use the Shufflin' Crew members' [p]ersonas even though Defendants did not have and do not have the Shufflin' Crew members' permission to do so," in violation of IRPA. Am. Compl. ¶ 48. Defendants argue that this claim is preempted by the Copyright Act. Defs.' Br. at 5-20. The Court disagrees.

Copyright preemption of right-of-publicity claims is not a simple issue. 1-1 Nimmer on Copyright § 101[B][3][b][i] ("The interplay between copyright pre-emption and the right of publicity has seen more volatility than just about any other doctrine canvassed throughout this treatise. Tremendous disarray punctuates the cases."). And Defendants are correct that many cases hold that right-of-publicity claims are preempted by the Copyright Act when the allegedly unauthorized use of a plaintiff's identity is coterminous with performance, reproduction, or distribution of a copyrighted work. *See Laws v. Sony Music Entm't, Inc.*, 448 F.3d 1134, 1139-45

(9th Cir. 2006) (holding a right-of-publicity claim based on use of a copyrighted voice recording of the plaintiff was preempted); *Jules Jordan Video, Inc. v. 144942 Canada Inc.*, 617 F.3d 1146, 1152-55 (9th Cir. 2010) (holding that a right-of-publicity claim based on the sale of copyrighted videos featuring plaintiffs was preempted); *Baltimore Orioles, Inc. v. Major League Baseball Players Assoc.*, 805 F.2d 663, 674-78 (7th Cir. 1986) (holding that an IRPA claim based on copyrighted broadcasts of games was preempted); *Maloney v. T3Media, Inc.,* 2015 WL 1346991, at *5-9 (C.D. Cal. Mar. 6, 2015) (holding that a right-of-publicity claim based on sale of copyrighted photos of the plaintiffs was preempted); *Ray v. ESPN, Inc.*, 2014 WL 2766187, at *2-5 (W.D. Mo. Apr. 8, 2014) (holding that a right-of-publicity claim based on broadcasts of copyrighted professional wrestling performances by the plaintiff was preempted); *Dryer v. Nat'l Football League*, 55 F. Supp. 3d 1181, 1200-02 (D. Minn. 2014) (holding that a right-of-publicity claim based on broadcasting recordings of football games played by the plaintiff was preempted); *Fleet v. CBS, Inc.*, 58 Cal. Rptr. 2d 645, 650-53 (Cal. Dist. Ct. App. 1996) (holding that a right-of-publicity claim based on distribution of the plaintiff's performance in a copyrighted film was preempted). This makes sense. If the alleged use of the plaintiff's identity is confined solely to that plaintiff's performance in a copyrighted work, the entirety of the "identity"[5] in question really is fixed in the recorded performance—a tangible medium of expression. The conduct violating the plaintiff's right to publicity would

---

[5]IRPA defines "identity" as "any attribute of an individual that serves to identify that individual to an ordinary, reasonable viewer or listener, including but not limited to (i) name, (ii) signature, (iii) photograph, (iv) image, (v) likeness, or (vi) voice." 765 ILCS 1075/5.

merely be an "act of reproducing, performing, distributing, or displaying the work," and allowing a right-of-publicity claim to proceed on this basis would contradict "the obvious conclusion that a party who does not hold the copyright in a performance captured on film cannot prevent the one who does from exploiting it by resort to state law." *Fleet*, 58 Cal. Rptr. at 652-53; *see also* 1-1 Nimmer on Copyright § 101[B][3][b][ii] (approving of *Fleet*'s approach). To the extent that Plaintiffs in this case are attempting to allege a claim under IRPA based on Defendants' use of the Shufflin' Crew's performances in the Shuffle, that claim would be preempted by copyright law.

But there is a theory of liability under IRPA that is not preempted, and Plaintiffs plausibly allege a claim under this theory. Courts have held that right-of-publicity claims are not preempted by the Copyright Act when the alleged unauthorized use of the plaintiff's identity extends beyond the copyrighted work. In some of these cases, the copyrighted work is used to advertise another product or service. *See Toney v. L'Oreal USA, Inc.*, 406 F.3d 905, 908-11 (7th Cir. 2005) (holding that an IRPA claim based on the use of a photograph of the plaintiff to sell a hair product was not preempted); *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1003-05 (9th Cir. 2001) (holding that the use of a photograph of plaintiffs to sell clothing was not preempted). In others, the plaintiff's name or likeness (apart from a copyrighted work) is used to advertise some product, which itself might be a copyrighted work. *See Brown v. Ames*, 201 F.3d 654, 657-60 (5th Cir. 2000) (holding that a right-of-publicity claim was not preempted when the defendants, without

10

authorization, used the plaintiffs' names and likenesses to advertise an album containing plaintiffs' copyrighted vocal performances); *Seifer v. PHE, Inc.*, 196 F. Supp. 2d 622, 626-28 (S.D. Ohio 2002) (holding that a right-of-publicity claim was not preempted when the defendants used the plaintiff's name and likeness to advertise both videos she appeared in and those she did not); *see also Jules Jordan Video*, 617 F.3d at 1154 (suggesting that a non-preempted right-of-publicity claim would lie were the defendants to use plaintiff's likeness on the cover of the DVD containing the copyrighted performance, so long as the likeness was not a still shot from the performance itself); *Baltimore Orioles*, 805 F.2d at 676 n.24 (reasoning that "[a] player's right of publicity in his name or likeness would not be preempted if a company, without the consent of the player, used the player's name to advertise its product"). In either case, the plaintiff's performance in some copyrighted work is not the sole embodiment of the "identity" that the plaintiff seeks to protect. A copyrighted work might be somehow related to the right-of-publicity claim, but the work and the embodiment of the plaintiff's "identity" being used are not coterminous. The plaintiff's identity or persona—his voice, likeness, signature, or image—is not, therefore, fixed in a tangible medium of expression.[6] *Toney*, 406 F.3d at 910; *see also Seifer*, 196 F. Supp. 2d at 628 ("[A] person's name and likeness do not become copyrightable merely because they have been placed on works which are subject to copyright law."). And because the plaintiff is seeking to protect the

---

[6]Defendants' argument that the Court has already decided that the subject-matter prong of the preemption standard was satisfied is wrong. The IRPA claim was not a part of the original complaint, and was therefore not considered in deciding the first motion to remand.

"amorphous concept" of his identity, separate from a particular embodiment of that identity contained solely within a copyrighted work, enforcement of his right of publicity is not equivalent to any of the rights set forth in § 106. *Toney*, 406 F.3d at 910.

Plaintiffs' IRPA claim pleads this theory. Plaintiffs allege that "Defendants held themselves out as if they had an affiliation with or authorization from the Shufflin' Crew to use the Shufflin' Crew members' [p]ersonas even though Defendants did not have and do not have the Shufflin' Crew members' permission to do so." Am. Compl. ¶ 48. As a result of this unauthorized use of the Shufflin' Crew's personas, Plaintiffs allege that "Defendants received and continue to receive commercial benefits in the form of revenues and other financial benefits." *Id.* ¶ 49. Plaintiffs request relief in the form of "[a]ctual damages and/or profits from Defendants' unauthorized use of the Shufflin' Crew members' [p]ersonas." *Id.* ¶ 51. Plaintiffs are not alleging that Defendants misused the Shufflin' Crew's performances *in* the Shuffle, but instead that Defendants falsely represented that they had an affiliation with the Shufflin' Crew—that is, used the Shufflin' Crew's identities apart from their performances in the Shuffle[7]—to reap a financial benefit. This claim is not preempted by the Copyright Act.

Defendants argue that Plaintiffs did not plead that their images were used in connection with advertisements for products or services. Defs.' Resp. Br. at 16. Not so. Reading the Plaintiffs' allegations as a whole, it is clear that they are alleging

---

[7]Remember that a plaintiff's *name* is part of his identity under IRPA. 765 ILCS 1075/5.

that Defendants used their identities to advertise the Shuffle itself. Am. Compl. ¶¶ 18-23. And, contrary to Defendants' arguments, advertising the Shuffle does not necessarily drag the IRPA claim into the territory covered by copyright law. Plaintiffs allege that Defendants pretended to have an affiliation with the Shufflin' Crew (again, apart from their performances in the work itself) to sell copies of or licenses to use the Shuffle. To illustrate, consider the plausible scenario that Defendants told potential licensors or buyers that Willie Gault and Richard Dent continue to work with Renaissance Marketing and that they endorse the Shuffle. If, as Plaintiffs allege, neither Gault nor Dent gave Defendants authorization to use their names to endorse the Shuffle, Defendants would be trading on Plaintiffs' *identities* in order to sell a product. The identities in this case—Plaintiffs' names—would be broader than their performances that are embodied in the copyrighted work. The "amorphous concept" of identity would extend beyond the bounds of the work protected by copyright and thus avoid preemption. *Toney*, 406 F.3d at 910; *see also Seifer*, 196 F. Supp. 2d at 628.

It is true that pleading the claim in this way significantly limits Plaintiffs' potential damages. If they prevail on the IRPA claim, the Shufflin' Crew will not be entitled to all revenues from the sale of the Shuffle, just those revenues attributable to falsely holding out that Defendants had an affiliation with or authorization from the Shufflin' Crew. This line will likely be challenging to draw. Plaintiffs will have to devise some way of ascertaining which sales or licenses of the Shuffle—or, more likely, which *portions* of sales or licenses of the Shuffle—were due to a perceived

affiliation with the Shufflin' Crew apart from their performances in the work. It is a narrow ground on which to base a claim, but Plaintiffs are nonetheless free to pursue it.

Defendants do not believe that Plaintiffs have pled so narrowly because (1) there is no express disclaimer of copyright damages, and (2) there are no specific allegations detailing *how* Defendants have used the Shufflin' Crew's personas apart from the Shuffle itself. Defs.' Resp. Br. at 16-17. Although these may be close questions, the IRPA allegations are sufficient to plead a non-preempted IRPA claim. It is true that there is no express disclaimer of copyright damages, but the disclaimer is implicit in the prayer for relief. Plaintiffs request "[a]ctual damages and/or profits from Defendants' unauthorized use of the Shufflin' Crew members' *[p]ersonas*" and other ancillary relief. Am. Compl. ¶ 51 (emphasis added). They do not request all revenues or profits from the sale or licensing of the Shuffle, only those revenues derived from the unauthorized use of their identities. And, though there are no allegations detailing specific instances of the use of Plaintiffs' personas to advertise the Shuffle, obtaining those details is an issue for discovery and there is enough material in the complaint to "give [Defendants] fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal alternation omitted). Plaintiffs allege that Defendants represented that they were affiliated with or authorized by the Shufflin' Crew in selling the Shuffle. Am. Compl. ¶¶ 20-24; 47-50. The facts are not specifically alleged at this stage, but they are *factual* allegations (not mere legal conclusions) and are sufficient to alert

Defendants to the nature and basis of the claim against them. Discovery will yield information about what specific advertising efforts Defendants undertook (if any) that might have infringed upon Plaintiffs' right to publicity. If, in fact, there was no use of Plaintiffs' identities apart from their performance in the Shuffle, Defendants can move for summary judgment.

Defendants and the proposed intervenor also argue that interpretation of the copyright work-for-hire doctrine is necessary to resolve the issues in this case. Defs.' Resp. Br. at 17-18; Red Label Resp. Br. at 5-8. It is true that the work-for-hire doctrine can be basis for complete copyright preemption, *see, e.g., JustMed, Inc. v. Byce*, 600 F.3d 1118, 1124 (9th Cir. 2010), but the work-for-hire doctrine is about determining the author (and thus the owner) of a copyrighted work, *see Harris Custom Builders, Inc. v. Hoffmeyer*, 92 F.3d 517, 518-19 (7th Cir. 1996) (noting that the author and owner of a copyright is generally "the party who actually creates the work," but if the copyrighted material is a work made for hire, "the owner [of the copyright] is the employer or other person for whom the work was prepared"). Here, there is no dispute about authorship of the copyrighted work. The Shufflin' Crew does not allege and has never alleged that it owns the copyrights in question. *See generally* State Court Compl.; Am. Compl. They allege instead that they own their personas and identities, which, as discussed above, can be separated from the copyrighted works.[8] The work-for-hire doctrine does not, therefore, serve as a basis for preemption.

---

[8]Although the original state-court complaint could be interpreted to request relief that would ultimately be based in copyright, as discussed in the order denying the first

### B. Relinquishment

Because the IRPA claim is not preempted, the Court must determine whether to relinquish jurisdiction over the state-law claims. Plaintiffs frame this question as one of subject-matter jurisdiction, Pls.' Br. at 1, but that is incorrect. It is true that once removed, a case may be remanded based on lack of subject-matter jurisdiction any time before a final judgment is issued. 28 U.S.C. § 1447(c). But if the case was properly removed, dismissal of the claim giving rise to the court's original jurisdiction will not deprive a court of subject-matter jurisdiction. *Anderson*, 614 F.3d at 364 ("[I]f there is federal jurisdiction on the date a suit is removed … the final resolution of the claim that supported the suit's presence in federal court does not necessitate remand."); *see also Burlington Northern*, 606 F.3d at 380-81 ("The well-established general rule is that jurisdiction is determined at the time of removal, and nothing filed after removal affects jurisdiction."). To sustain removal, the district court must have original jurisdiction over at least one of the claims. 28 U.S.C. § 1441. If the court has original (in this case, federal-question) jurisdiction over any claim, it may exercise supplemental jurisdiction over related state-law claims. 28 U.S.C. § 1367. This supplemental jurisdiction does not disappear when claim giving rise to original jurisdiction is dismissed, even when the federal claims are dismissed voluntarily. *Carlsbad*, 556 U.S. at 639-41; *Anderson*, 614 F.3d at 365. A district court may, however, decline to exercise its supplemental jurisdiction once the federal claim has been dismissed. 28 U.S.C. § 1367(c)(3) (stating that a court

---

motion to remand, they never alleged or argued that they owned the copyrights at issue or that the Shuffle was not a work made for hire. *See* R. 16, Pls.' First Mot. Remand Br. at 4 ("Plaintiffs' complaint does not claim copyright ownership.").

may decline to exercise supplemental jurisdiction if it "has dismissed all claims over which it has original jurisdiction"). The decision to relinquish supplemental jurisdiction is "purely discretionary."[9] *Carlsbad*, 556 U.S. at 639.

Ordinarily, "[w]hen the federal claim in a case drops out before trial, the presumption is that the district judge will relinquish jurisdiction over any supplemental claim to the state courts." *Leister v. Dovetail, Inc.*, 546 F.3d 875, 882 (7th Cir. 2008). This presumption is "particularly strong where, as here, the state-law claims are complex and raise unsettled legal issues." *RWJ Mgmt. Co.*, 672 F.3d at 478-79. As discussed above, it might be challenging to ascertain precisely which components of Plaintiffs' damages are attributable to Defendants' alleged use of Plaintiffs' personas to market the Shuffle, as separated from the Shufflin' Crew's performance in the copyrighted work (over which Plaintiff does not and cannot state a claim). The careful drawing of the line between damages for use of the Shufflin' Crew's performance in the Shuffle and damages for claiming to have an affiliation with the Shufflin' Crew (either implicitly or explicitly) to sell the Shuffle will require careful consideration of the state-law causes of action (as applied to a novel context), the Illinois Right to Publicity Act (which has not been interpreted all that often), and their associated remedies. These complex and novel damages issues are purely questions of state law, and they are better left to a state-court forum.

---

[9]The Seventh Circuit has pointed out the sometimes-semantic nature of the distinction between relinquishing supplemental jurisdiction and remanding for lack of subject-matter jurisdiction in this context, *see Townsquare Media, Inc. v. Brill*, 652 F.3d 767, 772 (7th Cir. 2011), but the principle is nonetheless binding on this Court.

The presumption in favor of relinquishment is, of course, rebuttable, "but it should not be lightly abandoned, as it is based on a legitimate and substantial concern with minimizing federal intrusion into areas of purely state law." *Id.* at 479-80 (internal quotation marks omitted) (citing *Khan v. State Oil Co.*, 93 .3d 1358, 1366 (7th Cir. 1996)). The Seventh Circuit has identified three circumstances that might displace the presumption of relinquishing jurisdiction: (1) "the statute of limitations has run on the [supplemental] claim, precluding the filing of a separate suit in state court"; (2) "substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort"; or (3) "when it is absolutely clear how the [supplemental] claims can be decided." *Sharp Elecs. Corp. v. Metro. Life Ins. Co.*, 578 F.3d 505, 514-15 (7th Cir. 2009).

None of these unusual circumstances apply in this case. There might be issues with the timeliness of Plaintiffs' complaint,[10] but these issues are in the case whether or not the Court relinquishes supplemental jurisdiction. *See* 28 U.S.C. § 1367(d) (tolling the statute of limitations for 30 days after dismissal of a supplemental claim); *see also Myers v. Cnty. of Lake*, 30 F.3d 847, 848-49 (7th Cir. 1994) (holding that § 1367(d) "removes the principal reason for retaining a case in federal court when the federal claim belatedly disappears"). Nor have significant judicial resources been expended on this case. This case has not yet reached the motion to dismiss stage, and the Court has not engaged with the merits of the claims beyond the motions to remand. *See Wright v. Associated Ins. Cos.*, 29 F.3d

---

[10]The royalty agreement expired in 1989, but Plaintiffs did not bring suit until 2014.

1244, 1251 ("[R]arely when a case is dismissed on the pleadings can 'judicial economy' be a good reason to retain jurisdiction."). Finally, it is not clear how the state-law claims should be decided. Apart from the myriad factual issues that will need to be resolved, there are questions surrounding the limitations period, the proper scope of damages, and interpretation of the IRPA.

Defendants urge the Court to retain jurisdiction over the state-law claims because of the "forum manipulation rule" articulated by the Supreme Court in *Rockwell International Corporation v. United States*, 549 U.S. 457 (2007). Defs.' Br. at 2-4. *Rockwell* was not a case about removal or supplemental jurisdiction,[11] but the Supreme Court did briefly discuss amendments to removed claims. *Id.* at 474 n.6. The Supreme Court noted that, "when a defendant removes a case to federal court based on the presence of a federal claim, an amendment eliminating the original basis for federal jurisdiction generally does not defeat jurisdiction." *Id.* (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 346 (1988); *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 293 (1938)). The Court noted, however, that "removal cases raise forum-manipulation concerns that simply do not exist

---

[11]In *Rockwell*, the plaintiff—a *qui tam* relator in a False Claims Act action—originally filed his claims in federal court. 549 U.S. at 463. In False Claims Act cases, jurisdiction is premised in part on the relator being the "original source" of the allegations of fraud. *Id.* at 467 (citing 31 U.S.C. § 3730(e)(4)(B)). During the course of the litigation, the plaintiff amended his complaint to change the allegations of fraud, prompting the Supreme Court to consider *which* of the plaintiff's allegations were relevant for the "original source" rule. *Id.* at 473. The Supreme Court concluded that it would consider the amended allegations because, although subject-matter jurisdiction depends on the state of things at the time the action was brought, the "state of things and the originally alleged state of things are not synonymous." *Id.* "[D]emonstration that the original allegations were false will defeat jurisdiction." *Id.* Therefore, "when a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction." *Id.* at 473-74.

when it is the *plaintiff* who chooses a federal forum and then pleads away jurisdiction through amendment," as was the case in *Rockwell*.

From this footnote, the Seventh Circuit extrapolated a "forum manipulation" exception to the general rule: "if [a] case has been removed to federal court and the defendant opposes the remand, … dismissal is no longer mandatory." *Townsquare Media, Inc. v. Brill*, 652 F.3d 767, 773 (7th Cir. 2011); *accord. Brown v. Calamos*, 664 F.3d 123, 131 (7th Cir. 2011) ("Nor can the suit be saved by amending the complaint to delete the passage that injected fraud into the case … it is contrary to the 'forum manipulation' rule recognized in *Rockwell*."); *Burlington Northern*, 606 F.3d at 380-81 ("And though it is sometimes possible for a plaintiff who sues in federal court to amend away jurisdiction, removal cases present concerns about forum manipulation that counsel against allowing a plaintiff's post-removal amendments to affect jurisdiction."). The Seventh Circuit reasons that amending a removed complaint to eliminate federal claims "is a case not just of the plaintiff's abandoning his federal claims but of his seeking to deprive the defendant of the opportunity to defend the remaining claims in the court that obtained jurisdiction of the case on the defendant's initiative." *Townsquare*, 652 F.3d at 773. "That is called pulling the rug out from under your adversary's feet." *Id.* The forum-manipulation exception is not "a categorical prohibition on the remand of cases involving state-law claims"; it is simply another factor for the court to consider in determining whether to relinquish supplemental jurisdiction. *See Carnegie Mellon*, 484 U.S. at

357 ("A district court can consider whether the plaintiff has engaged in any manipulative tactics when it decides whether to remand the case.").

Unlike many of the cases in which the Seventh Circuit applied this "forum manipulation" exception, however, there is no basis here on which to infer that Plaintiffs are using manipulative tactics. It is clear that, from the outset of this case, Plaintiffs believed that they were pursuing state-law claims. *See* State Court Compl.; Pls.' First Mot. Remand. Although the relief Plaintiffs initially requested may have implicated copyright law, *see Dent*, 2014 WL 5465006, there is no evidence that the relief sought was anything more than overly expansive pleading, rather than a desire to sneak copyright claims into a state court. In fact, Plaintiffs narrowed the relief requested in their amended complaint (for the claims that were not preempted) to avoid territory governed by copyright law. *Compare* Am. Compl. at Prayers for Relief (Counts 1, 5, and 6) *with* State Court Compl. at Prayers for Relief (Counts 1, 2, and 3). Plaintiffs' decision to drop the preempted claims also has an innocent explanation: Plaintiffs do not allege—and never have alleged—that they own the copyrights to the Shuffle. The preempted claims were interpreted to be subject to federal copyright laws, and without any ownership in the copyrights, Plaintiffs could not expect to prevail on any of those claims. So, not only is there a logical explanation for dropping the federal claims, this course of action might have been Plaintiffs' only legitimate option. *See, e.g.*, Fed. R. Civ. P. 11(b) (requiring attorneys to certify that pleadings and motions submitted to the court have a reasonable basis in fact and law). Given the information before the Court at this

21

stage in the litigation, no inference of forum-manipulation can be drawn from Plaintiffs' decision to abandon the preempted claims.

Nor can an adverse inference be drawn from Plaintiffs' motions to remand. It is true that, absent some specific circumstances, parties should be forum-neutral. But § 1367(c) and the judicial presumption in favor of relinquishment recognize that if state law claims are complex or novel and all federal claims have been dismissed, there is a compelling reason to resolve state-law claims in a state forum. *See* 28 U.S.C. § 1367(c); *Huffman v. Hains*, 865 F.2d 920, 923 (7th Cir. 1989) ("[R]espect for the state's interest in applying its own law, along with the state court's greater expertise in applying state law, become paramount concerns."). It is understandable, then, that Plaintiffs would want their Illinois-law claims to be decided by an Illinois court.

By contrast, the cases in which the Seventh Circuit has applied the forum-manipulation exception do raise genuine concerns of gamesmanship. For example, jurisdiction over the removed claim in *In re Burlington Northern Santa Fe Railway Company* was premised on the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d), which confers federal jurisdiction over putative class actions where there is minimal diversity and an amount in controversy exceeding $5 million. 606 F.3d at 379. After removal, the plaintiff amended his complaint to remove the class allegations. *Id.* The Seventh Circuit concluded that the post-removal amendment did not destroy CAFA jurisdiction in part due to concerns about forum manipulation. *Id.* at 381. Unlike this case, in which there is a substantial and

legitimate explanation for dropping the allegations that provide the basis for jurisdiction (Plaintiffs do not own the copyrights, so they cannot pursue copyright claims), there appeared to be no legitimate reason in *Burlington Northern* for plaintiffs' counsel to abandon class claims beyond simply trying to avoid federal jurisdiction. More importantly, Congress's explicit motivation in enacting CAFA was to override plaintiffs' preferences for litigating cases of national importance in state courts. *Hart v. FedEx Ground Package Sys., Inc.*, 457 F.3d 675, 681-82 (citing Pub. L. 109-2, § 2). To allow plaintiffs to amend away CAFA jurisdiction would undermine the very purpose of CAFA. And although the class allegations were removed from the case in *Burlington Northern* prior to certification, class actions raise particularly strong concerns about forum manipulation because the class representatives (and their attorneys) act as fiduciaries for absent class members. *See Addison Automatics, Inc. v. Hartford Cas. Ins. Co.*, 731 F.3d 740, 742-43 (7th Cir. 2013). Abandoning claims or theories of liability in order to secure a particular forum could prejudice absent class members who will be bound by the representative's decisions.

Similar concerns arose in *Brown v. Calamos*, another class action. 664 F.3d at 124. The putative class action in *Brown* was removed under the Securities Litigation Uniform Standards Act (SLUSA), 15 U.S.C. § 78bb(f)(1), which prohibits securities class actions when, among other things, the allegations are based on fraud in connection with purchase or sale of a security. *Id.* SLUSA was "designed to prevent plaintiffs from migrating to state court in order to evade rules for federal

securities litigation," and actions removed under SLUSA are often quickly dismissed. *Id.* (quoting *Kircher v. Putnam Funds Trust*, 403 F.3d 478, 482 (7th Cir. 2005)). After concluding that the putative class action was properly removed under SLUSA, the Seventh Circuit noted that the complaint could not be saved by "delet[ing] the passage that injected fraud into the case" because the forum-manipulation rule would weigh against remand. *Id.* at 131. As with CAFA, the unique legal framework of SLUSA counseled against allowing the plaintiff to amend away federal jurisdiction. *Id.* at 128 (stating that allowing a complainant to remove his fraud allegations would thwart "SLUSA's goal of preventing state-court end runs around limitations that the Private Securities Litigation Reform Act had placed on federal suits for securities fraud"). The Seventh Circuit also concluded that the plaintiff's deletion of the fraud allegations "would not be credible" because they were central to his case. *Id.* at 131. So "[t]he likelihood that [the plaintiff] would do everything he could to sneak the allegation back into the case, if the complaint were amended and remand to the state court followed, would be so great as to make it imprudent to allow the complaint to be amended to delete the allegation." *Id.*

Echoing the Seventh Circuit in *Brown*, Defendants express concern that the copyright claims could sneak back into the case over the course of the litigation. Defs.' Resp. Br. at 3-4 ("[T]here is an overwhelming likelihood that Plaintiffs will try to sneak back into the case damages based on use … of their images and voices in the Shuffle video and song themselves."). Although Defendants' fears are not

24

Case: 1:14-cv-02999 Document #: 102 Filed: 06/01/15 Page 25 of 26 PageID #:718

wholly unfounded, they do not justify retaining jurisdiction over purely state-law claims. The claims that this Court has found to be preempted by copyright law will not reenter the case; they have been voluntarily dismissed by Plaintiffs.[12] The remaining claims in this case were not the basis of the Court's original jurisdiction, and, as discussed in the order denying the motion to remand, the only viable theory of liability for those claims does not involve performance, reproduction, publication, or distribution of the copyrighted work. *See Dent*, 2014 WL 5465006 at *5-6. The same goes for the IRPA claim discussed above.

The Court is nonetheless sensitive to Defendants' concerns about copyright issues making their way back into the case. It will be challenging for the state court to precisely identify the boundary between the damages arising from Plaintiffs' state-law claims and damages arising from use of the copyrights. This presents some risk that copyright damages will be improperly reintroduced into the case. If that situation does occur, Defendants can re-remove the case. *See* 28 U.S.C. § 1446(b)(3) (allowing for removal 30 days after the filing of a pleading, motion, or order "from which it may first be ascertained that the case is one which is or has become removable"). At that time, an inference of forum manipulation potentially would be established in the record, and if forum manipulation were found, then the

---

[12]Unlike both *Brown* and *Burlington Northern*, in which the plaintiffs modified the claims over which the court had original jurisdiction to eliminate the basis of that jurisdiction, the remaining claims in this case were never the basis of the Court's original jurisdiction. For that reason, neither *Brown* nor *Burlington Northern* dealt with supplemental jurisdiction at all. *See Brown*, 664 F.3d at 124-26; *Burlington Northern*, 606 F.3d at 379-81. *Townsquare*, which does address supplemental jurisdiction (though in the bankruptcy context), does not actually base its holding on the forum-manipulation exception; the defendant in *Townsquare* waived the argument by failing to raise it. 652 F.3d at 773-74.

claims would remain in federal court even if Plaintiffs were to amend away any preempted claims. But on the record before the Court now, there is simply no basis on which to infer that Plaintiffs are attempting to pull the rug out from under their opponents. Because the remaining claims arise purely under state-law, the state-law issues are complex, and significant resources have not yet been expended on this case, the Court will relinquish jurisdiction over the state-law claims and remand the case.

## IV. Conclusion

For the reasons discussed above, Plaintiffs' motion to remand is granted on different grounds. Plaintiffs' IRPA claim is not preempted by the Copyright Act, and the Court relinquishes its supplemental jurisdiction over the state-law claims. The case is remanded to the Illinois court for further proceedings.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: June 1, 2015